**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KERRY RUSSELL,<br><br>    Plaintiff,<br><br>        v.<br><br>THE CITY/TOWN OF HAMMONTON, et al.,<br><br>    Defendants. | Civil No. 15-1669-KMW |

Appearances:

Thomas McKay, III, Esq.,
Cozen O'Conner, P.C.
        Counsel for Plaintiff Kerry Russell

Steven M. Horn, Esq., Thomas B. Reynolds, Esq., and John J. Bannan, Esq.,
Reynolds & Horn, P.C.
        Counsel for Defendant Jason Rigby

**WILLIAMS**, Magistrate Judge

## OPINION

Before the Court is Defendant Jason Rigby's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Kerry Russell, opposes the Motion. The Court has considered the Parties' submissions and held a hearing on the matter on January 27, 2020. For the reasons set forth below, Defendant's Motion is granted.

## I.    Factual and Procedural Background

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 wherein Plaintiff, Kerry Russell, alleges, *inter alia*, that defendants violated his constitutional rights by way of an illegal traffic stop that led to his arrest and charges for driving while intoxicated, driving with a suspended license, and other associated traffic offenses.  The stop occurred on February 5, 2012, at approximately 1:55 p.m. when Mr. Russell was driving his wife's white pickup truck in the area of Route 30 and Main Road in Hammonton Township, New Jersey.  At the time, Defendant, Jason Rigby, a Hammonton Township police officer, was on duty and on patrol in the same vicinity and initiated a traffic stop of Mr. Russell.  The facts surrounding the stop and what occurred after are disputed to some degree.

According to Officer Rigby's "Drinking and Driving Report," Officer Rigby was driving behind Mr. Russell and was unable to read the license plate on Mr. Russell's vehicle because it was in "poor condition," "dirty and covered with debris."  Drinking and Driving Report, Feb. 5, 2012, Def.'s Ex. B at 2.  Officer Rigby reported that he pulled Mr. Russell over for a motor vehicle violation based on the poor condition of the plate.  *Id.*  After stopping the vehicle, Officer Rigby approached and asked Mr. Russell for his driver's license, vehicle registration, and proof of insurance.

Mr. Russell provided the registration and insurance but did not have a driver's license and does not dispute that he did not have a valid driver's license at the time. At this point, according to Officer Rigby's report, he called in the vehicle's license plate number to Dispatch by reading it from Mr. Russell's paperwork because he was still not able to read the license plate on the vehicle. *Id.*

Officer Rigby states that upon conversing with Mr. Russell, he detected an odor of alcohol, which Mr. Russell disputes. He asked Mr. Russell about his alcohol consumption and Mr. Russell stated that he had drank two beers earlier that day. Officer Rigby then asked Mr. Russell to exit the vehicle and conducted a field sobriety test, which Officer Rigby determined Mr. Russell failed. Mr. Russell disputes Officer Rigby's assessment because Mr. Russell was wearing leg braces at that time and had limited physical ability, thus prohibiting him from completing the test. After the sobriety test, Officer Rigby advised Mr. Russell that he was under arrest for driving while intoxicated (DWI) and advised Mr. Russell of his Miranda rights. Officer Rigby then transported Mr. Russell to police headquarters, again advised him of his Miranda rights, and advised him of his DWI rights. Mr. Russell consented to a breathalyzer examination and was found to have a blood alcohol content of 0.08%, which is above the statutory limit; Mr. Russell,

however, disputes the validity of the test results. Officer Rigby issued Mr. Russell four Municipal Court summonses for motor vehicle and traffic offenses for driving with a suspended license (N.J. STAT. ANN. 39:3-40), driving with an "unclear license plate" (N.J. STAT. ANN. 39:3-33), DWI (N.J. STAT. ANN. 39:4-50), and reckless driving (N.J. STAT. ANN. 39:4-96). Mr. Russell was then released. Approximately one week later, Mr. Russell first reported to Municipal Court and returned on several occasions but proceedings were repeatedly postponed.

Months later, on or about June 19, 2012, the Hammonton Municipal Prosecutor directed Officer Rigby to file an additional charge against Mr. Russell under a then newly enacted statute, N.J. STAT. ANN. 2C:40-26, because Mr. Russell had been driving while his license was suspended due to a prior DWI. In accordance with that instruction, Rigby wrote a criminal complaint asserting the charge and presented it by telephone to a Municipal Court Judge, who found probable cause, issued an arrest warrant for Mr. Russell, and set bail at $2,500.00. Because Mr. Russell resided in Buena Vista, a neighboring municipality, Rigby contacted the Buena Vista police for assistance with locating Mr. Russell and executing the arrest warrant. An unidentified Buena Vista officer arrested Mr. Russell at his home and later transferred custody of Mr. Russell to Officer

Rigby.  Subsequently, at some point not represented in the record, Mr. Russell was indicted on the 2C:40-26 charge.

Mr. Russell was assigned a public defender who filed a Motion to Suppress based on Mr. Russell's contention that his license plate was not obstructed or unclear at the time of the stop.  Because the plate was readable, Mr. Russell argued, Rigby did not have probable cause for the traffic stop, thus prohibiting the use, in Mr. Russell's criminal proceedings, of any evidence derived from the stop under the Fourth Amendment exclusionary rule.  The Superior Court for Atlantic County heard the motion at a suppression hearing on February 25, 2013.  At the hearing, after receiving testimony from Officer Rigby and others, the court concluded that the State did not sustain its burden to show that the license plate was unreadable and granted Mr. Russell's motion to suppress.  Pl.'s Ex. C, Dkt. No. 72-3 at pp. 102-03.  In reaching this conclusion, the Court found that Officer Rigby's testimony "was not entirely consistent" regarding his ability to read Mr. Russell's license plate.  *Id.* at 101.  Specifically, the Court noted that Rigby's report stated that he had to read the license plate information from the vehicle registration he obtained from Mr. Russell because he remained unable to read it from the plate; however, a recording of Rigby's radio calls to Dispatch indicated that Rigby properly read and called in the plate number while still in his vehicle

parked behind Mr. Russell eight seconds after stopping the truck. The court also cited a photograph taken of the plate the day after the stop, the fact that there was no indication that Rigby ever told Mr. Russell that the stop was because of an unreadable plate, and that Rigby did not take a picture of the plate with his personal cell phone to establish "real hard objective evidence" that the plate was unreadable. *Id* at 101-02. Based on the court's granting Mr. Russell's motion to suppress, the prosecutor filed a motion to dismiss the 2C:40-26 indictment. Pl.'s Ex. D. In the motion, the prosecution stated that "the State cannot pursue the prosecution of the defendant for charges that stemmed from the initial stop of the defendant." *Id.* The Superior Court granted the motion without prejudice on March 6, 2013.[1] *Id.*

On March 6, 2015, Mr. Russell filed the initial complaint in this case *pro se* and applied to proceed *in forma pauperis*. After initial screening of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the Hon. Noel L. Hillman dismissed the initial complaint without prejudice. Memorandum Op. and Order, Aug. 13, 2015, [Dkt. No. 2]. Mr. Russell filed an Amended Complaint and

---

[1] Both the motion and the dismissal order specifically address the indictment charging Mr. Russell with violating 2C:40-26 and do not reference the traffic violations issued by Officer Rigby on February 5, 2012. There is no dispute among the Parties, however, that there was no further prosecution or action on those charges.

alleged a number of claims arising from his arrest and the subsequent charges, including civil rights and constitutional violations pursuant to 42 U.S.C. § 1983 and similar claims under New Jersey law. Am. Compl., [Dkt. No. 3]. Specifically, Mr. Russell alleged, *inter alia*, false arrest, conspiracy, and malicious prosecution, including a count for "Malicious Prosecution Based on Race," as well as racial profiling. *Id.* at 21; 27-29. Upon screening the Amended Complaint, Judge Hillman dismissed all but Mr. Russell's claim for malicious prosecution, which is alleged against the only remaining defendant, Officer Rigby.[2] The matter proceeded and in September 2018, this Court *sua sponte* entered an order appointing Mr. Russell *pro bono* counsel. [Dkt. No. 52].

Officer Rigby now moves for summary judgment, arguing, primarily, that there was probable cause for the charges brought against Mr. Russell and that there is no evidence of malice, which is required to prove malicious prosecution. Officer Rigby further argues that Mr. Russell was guilty of the charges brought against him. Finally, Officer Rigby argues that he is entitled to qualified and good faith immunity.

---

[2] Mr. Russell's Complaint also names as a defendant the unknown and unnamed Buena Vista police officer who arrested Mr. Russell on June 19, 2012. Mr. Russell does not appear to have taken any action to proceed against that officer, however, and the time to seek amendments to the pleadings or add new parties has long since expired.

## II. **Summary Judgment Standard**[3]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 249).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial.*''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must

---

[3] On May 20, 2019, the Parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Judge Hillman entered the Consent Order on May 21, 2019. [Dkt. No. 70]]. This Court therefore has jurisdiction to hear Defendant's Motion.

identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### III. <u>Discussion</u>

<u>Malicious Prosecution</u>

A claim for malicious prosecution under New Jersey law requires a plaintiff to establish four elements: "that the defendant (1) instituted proceedings (2) without probable cause ... (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001) (citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1197 (3d Cir. 1993)). A plaintiff's "[f]ailure to prove any one of these four elements denies the plaintiff a cause of action [for malicious prosecution.]" *Trabal*, 269 F.3d at 248 (citing *Fleming v. United Parcel Serv.*, 642 A.2d 1029, 1030 (N.J. Super. Ct. App. Div. 1992), *cert. denied*, 516 U.S. 847 (1995)). A

9

constitutional claim for malicious prosecution under 42 U.S.C. § 1983 shares these four core elements but also requires a plaintiff to show that "the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).[4]

"[A] plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution." *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000). This innocence requirement is embedded within the favorable termination element. Favorable termination may be found where there is "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (citation omitted). Whatever the manner of termination, it must be one that disposes of the charges

---

[4] Neither party addresses or discusses this fifth element, nor are the parties clear as to whether Mr. Russell's malicious prosecution claim is brought under state law, federal law, or both. The Amended Complaint, however, makes clear that Mr. Russell's claims are premised on federal constitutional law and brought pursuant to 42 U.S.C. § 1983. (*See* Am. Compl. at pp. 18-25, [Dkt. No. 3] (citing the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983).)

in a way that indicates the innocence of the accused. *Id.; see also Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) ("a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner [that is] not indicative of the innocence of the accused").

The Third Circuit has noted that even though a prosecutor's abandoning the proceedings may satisfy the favorable termination element, "not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." *DiFronzo v. Chiovero*, 406 F. App'x 605, 609 (3d Cir. 2011) (citing *Hilfirty v. Shipman,* 91 F.3d 573, 579-580 (3d Cir. 1996)). Rather, such abandonment or dismissal of charges constitutes a favorable termination of the charges "only when their final disposition is such as to indicate the innocence of the accused." *Id.* (citing *Donahue,* 280 F.3d at 383). Thus, "upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged." *Kossler*, 564 F.3d at 188. "When the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element." *Id.* If a plaintiff fails to establish favorable termination, questions of probable cause and

11

malice are moot. *Id.* at 194 ("district courts need not reach the probable cause element unless they first make a finding of favorable termination . . . ."); *see also Hector*, 235 F.3d at 156 ("Even if the plaintiff in malicious prosecution can show that the defendant acted maliciously and without probable cause in instituting a prosecution, it is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged." (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* 885 (5th ed. 1984))).

Here, Officer Rigby argues that Mr. Russell is guilty of the offenses for which he was charged. Thus, if Mr. Russell's criminal proceedings did not end in a way that indicates that he was innocent of the conduct underlying the offenses, Mr. Russell cannot show that the criminal proceedings terminated in his favor. The Court therefore considers the circumstances surrounding the dismissal of the charges, including the offenses themselves and the alleged misconduct. Given the undisputed underlying facts and the reason for the dismissal, the Court concludes that Mr. Russell has not satisfied the favorable termination element.[5]

---

[5] Although the parties' papers and positions at oral argument focus heavily on probable cause for the traffic stop and the license plate, the question of whether Officer Rigby had probable cause to stop Mr. Russell based on the plate is not the central issue in

## The Dismissal of the Charges

The Court first addresses the charge on which Mr. Russell was indicted, N.J. STAT. ANN. 2C:40-26. Neither the motion to dismiss the indictment nor the order granting same indicate Mr. Russell's innocence with respect to the charge brought under the indictment. The indictment charged Mr. Russell with the violation of N.J. STAT. ANN. 2C:40-26 for Operating a Motor Vehicle During a Period of Suspension for DUI. (Pl.'s Ex. D). Sometime after Mr. Russell's Motion to Suppress was granted, the County Prosecutor moved to dismiss the indictment. (*Id.*) The Prosecutor stated the reason for the Motion to Dismiss as follows:

> On February 25, 2012 [sic], a plenary hearing on the Defendant's Motion to Suppress Evidence based on the Illegal Stop of Defendant was held before Judge Garofolo. Following testimony by Officer Rigby, of the Hammonton Police Department, the Motion was Granted. Therefore, the State cannot pursue the prosecution of the defendant for charges that stemmed from the initial stop of the defendant.

(*Id.*) On March 6, 2013, the Superior Court granted the Prosecutor's Motion and dismissed the indictment "without prejudice." (*Id.*)

These circumstances do not indicate Mr. Russell's innocence. The charge was dismissed based on the suppression of evidence and

---

this case, which no longer includes a claim for false arrest. Rather, favorable termination is the predominant issue. Consequently, Rigby's less than candid reasons for stopping Mr. Russell do not provide this Court with a basis upon which to allow this case to proceed.

the Prosecutor's resulting inability to proceed on charges arising from an illegal traffic stop. Nothing in the Motion or the order indicates that Mr. Russell was actually innocent of the conduct alleged in the indictment. *See Arnold v. New Jersey*, Civ. No. 03-3997, 2009 WL 10728026, at *7 (D.N.J. June 10, 2009) (holding that plaintiff failed to establish favorable termination where indictment was dismissed based upon motion to suppress due to racial profiling, which did not indicate plaintiffs' innocence, and collecting cases finding same); *see also Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013) (noting absence of favorable termination where "the decision to dismiss did not reflect [plaintiff's] innocence, but rather was a result of the suppression of evidence"). Absent any such indication, Mr. Russell fails to establish the favorable termination element with respect to the indictable offense.

The record is even less clear with respect to the four Municipal Court summonses that Officer Rigby issued to Mr. Russell. During his deposition, Mr. Russell testified that after his June 2012 arrest on the indictable offense, he was scheduled to appear in Superior Court on June 26, 2012, which coincided with an already scheduled appearance in Municipal Court regarding the summonses. (Pl.'s Ex. E, Dep. Of Kerry Russell, Mar. 19, 2019 ("Pl.'s Dep.") 110:17-24.) He testified that he went to Municipal Court on that

day and was told that the Municipal Court matter was "going to be postponed till [he] take[s] care of the thing in Mays Landing" (*i.e.*, Superior court). (*Id.* 116:22—117:7.) The Superior Court matter proceeded and the following February, Mr. Russell attended the suppression hearing, after which he received another court date. When he appeared, he was told the case had been dismissed and he then "picked up the dismissal papers." (*Id.* 131:14-19.) After the Superior Court matter was dismissed, Mr. Russell "never made it back" to Municipal Court for the summonses and testified that "everything just went nowhere. It was just dismissed. I don't know." (*Id.* 132:4-14.)

The record before the Court does not contain any documentation regarding the dismissal or failure to prosecute the summonses that Officer Rigby issued on February 5, 2012. At the hearing on the present Motion, Mr. Russell's counsel stated his belief that the summonses were dismissed as part of the Superior Court dismissal. There is no indication, however, that the Municipal Court charges were transferred to or made part of the Superior Court proceedings. Indeed, Mr. Russell testified that those matters were postponed pending the separate Superior Court proceedings. Tellingly, the Motion to Dismiss the indictment and the order granting the dismissal refer specifically only to the indictment. There is thus no evidence in the record regarding the termination of the Municipal

Court proceedings.[6]   The Court therefore cannot conclude that the proceedings terminated in Mr. Russell's favor where there is nothing to establish how they terminated in the first instance.

### The Underlying Facts and Offenses

The Court next looks to the offenses charged and the underlying facts.  *Kossler*, 564 F.3d at 188.   The Court first addresses the charge that gave rise to Mr. Russell's indictment, N.J. STAT. ANN. § 2C:40-26, and the traffic summons issued under N.J. STAT. ANN. § 39:3-40 for driving with a suspended or revoked license.   The former statute states:

> a. It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of R.S.39:3-40, if the actor's license was suspended or revoked for a first violation of R.S.39:4-50 [Driving While Intoxicated] or section 2 of P.L.1981, c. 512 (C.39:4-50.4a) and the actor had previously been convicted of violating R.S.39:3-40 while under suspension for that first offense. A person convicted of an offense under this subsection shall be sentenced by the court to a term of imprisonment.
>
> b. It shall be a crime of the fourth degree to operate a motor vehicle during the period of

---

[6] Even assuming *arguendo* that the summonses were resolved as part and parcel to the Superior Court proceedings, Mr. Russell still fails to establish favorable termination for the same reason that the dismissal of the indictment fails to do so: that dismissal does not indicate Mr. Russell's innocence.   In any event, Mr. Russell's counsel's belief or any assumptions as to the resolution of the proceedings are not enough to withstand a motion for summary judgment.   Mr. Russell must cite to specific facts and actual evidence demonstrating that the charges he claims were maliciously brought against him terminated in a manner indicating his innocence. Here, Mr. Russell has not done so.

> license suspension in violation of R.S.39:3-40, if
> the actor's license was suspended or revoked for a
> second or subsequent violation of R.S.39:4-50 or
> section 2 of P.L.1981, c. 512 (C.39:4-50.4a). A
> person convicted of an offense under this
> subsection shall be sentenced by the court to a
> term of imprisonment.

N.J. STAT. ANN. § 2C:40-26. The statute concerning driving with a

suspended license states as follows:

> No person to whom a driver's license has been
> refused or whose driver's license or reciprocity
> privilege has been suspended or revoked, or who has
> been prohibited from obtaining a driver's license,
> shall personally operate a motor vehicle during the
> period of refusal, suspension, revocation, or
> prohibition.

N.J. STAT. ANN. § 39:3-40.

The conclusion that the dismissal of the indictment does not

indicate Mr. Russell's innocence on these charges aligns with the

underlying facts of the case. It is undisputed that Mr. Russell

was driving while his license was suspended on February 5, 2012 –

most notably because Mr. Russell's interaction with Officer Rigby

began with a traffic stop. Mr. Russell admits that he did not have

a valid driver's license at the time. (Pl.'s Dep. 45:1-5.) Mr.

Russell further admits that he had prior DWI convictions and also

had prior convictions for driving while his license was suspended.

(*Id.* at 118:2-8.) In support of the 2C:40-26 charge, Officer Rigby

submits an Abstract of Mr. Russell's Driver History Record. (Def.'s

Ex. G.) Indeed, Mr. Russell does not argue that he is actually innocent of these charges and presents no evidence or facts demonstrating that to be the case. *See Grendysa v. Evesham Twp. Bd. of Educ.*, Civ. No. 02-1493, 2005 WL 2416983, at *10 (D.N.J. Sept. 27, 2005) ("a plaintiff claiming malicious prosecution must prove actual innocence as an element of his *prima facie* case" (citing *Hector*, 235 F.3d at 156)). Thus, given these offenses and the undisputed facts, the judgement as a whole does not reflect that Mr. Russell was innocent of these charges. *See Ramsey v. Dintino*, Civ. No. 05-5492, 2007 WL 979845, at *11 (D.N.J. Mar. 30, 2007) (dismissing malicious prosecution claim where "the facts adduced affirm[ed] [plaintiff's] guilt rather than establish his innocence of the underlying charges").

The Court next considers the citations for driving while intoxicated, N.J. STAT. ANN. § 39:4-50, and reckless driving, N.J. STAT. ANN. § 39:4-96. Pursuant to § 39:4-50, "a person who . . . operates a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood" is guilty of the offense. N.J. STAT. ANN. § 39:4-50. Pursuant to § 39:4-96,

> A person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving . . . .

N.J. STAT. ANN. § 39:4-96. A finding that a defendant was driving while intoxicated may support a conviction for reckless driving. *State v. Ebert*, 871 A.2d 664, 671 (N.J. Sup. Ct. App. Div. 2005).

Officer Rigby submits the results of the Breath Test administered to Mr. Russell on February 5, 2012. (Def.'s Ex. B at 9.) The results list two "Breath Tests" and reports a result of 0.08%. *Id.* This blood alcohol concentration ("BAC") satisfies § 39:4-50's requirement for driving while intoxicated. Mr. Russell contends that the test result is invalid "because Defendant conducted the test 3 times rather than 2 times as called for in the breathalyzer protocol." (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("Pl.'s Statement"), [Dkt. No. 72-1], at 20.) He further contends that "[i]f Mr. Russell only had 2 beers earlier that day as he has testified then a BAC reading of .08 percent" is not possible for someone Mr. Russell's size. (*Id.* at 21.) Moreover, Mr. Russell contends that Rigby admitted that Mr. Russell was polite, cooperative, never lost his temper or used harsh language at any time during the stop or subsequently that day and that such conduct is "inconsistent with Defendant's claim that Plaintiff was drunk." (*Id.*)

Viewing the facts most favorably to Mr. Russell, the Court concludes that Mr. Russell has not shown that he was actually innocent of these charges. Mr. Russell offers speculative theories

and unsupported assertions concerning Officer Rigby's administration of the breath tests. Though Mr. Russell references a "breathalyzer protocol," he does not identify what that is or submit it as part of the record, nor does he explain how Officer Rigby's purported failure to comply with the protocol led to an invalid result. He further offers no evidence, documentation, or expert testimony supporting his assertions that Officer Rigby's administration of the test was improper and could have invalidated the test results. Similarly, Mr. Russell offers no evidentiary support for the contention that Mr. Russell's behavior on the day in question was "inconsistent" with being intoxicated—or more precisely, inconsistent with having a BAC of .08%. In addition, Mr. Russell offers no expert testimony as to Mr. Russell's BAC in relation to his size, the amount of alcohol he alleges he consumed, and the time at which he states he consumed it. Bald assertions and unsupported theories are insufficient to overcome the evidence on record and survive a motion for summary judgment. As such, Mr. Russell has not established his actual innocence on the DWI or reckless driving charges.[7]

---

[7] During the hearing on Defendant's Motion, Plaintiff's counsel suggested that Officer Rigby may not use evidence obtained after the traffic stop for the same reason that the evidence was suppressed in the criminal action, namely, under the "fruit of the poisonous tree" theory underpinning the exclusionary rule. This is not the case. The Supreme Court has "repeatedly declined to

The final summons was for the alleged unclear license plate in violation of N.J. STAT. ANN. 39:3-33. The statute requires that "[a]ll identification marks [license plates] shall be kept clear and distinct and free from grease, dust or other blurring matter, so as to be plainly visible at all times of the day and night." N.J. STAT. ANN. § 39:3-33. The facts surrounding this charge are

---

extend the exclusionary rule to proceedings other than criminal trials." *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998); *United States v. Janis*, 428 U.S. 433, 447 (1976) ("In the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state."); *see also Burroughs v. City of Newark*, Civ. No. 11-1685, 2013 WL 4047588, at *10-*11 (D.N.J. Aug. 9, 2013) (finding that evidence discovered as a result of an unreasonable search and seizure that was suppressed in the criminal proceeding need not be excluded from plaintiff's malicious prosecution suit). *Burroughs*, though not cited by either party, is particularly persuasive. There, the plaintiff was subjected to a *Terry* frisk, which was found to be an unreasonable search; the search revealed that he was unlawfully carrying a firearm. *Burroughs*, 2013 WL 4047588, at *1-*2. The court concluded that even though the discovery of the weapon was unlawful, "plaintiff was indeed committing a crime." *Id.* at *11. The Court therefore determined that the defendant police officers had "ample probable cause to initiate a criminal proceeding against him." *Id.* Thus, a lack of probable cause for a seizure or search does not in and of itself preclude a finding of probable cause to initiate charges in a malicious prosecution action where a plaintiff was in fact committing a criminal offense and the officers discovered evidence thereof. Here, even if the traffic stop were unlawful, if the evidence obtained demonstrates that Mr. Russell was in fact committing the offenses charged, his malicious prosecution claim cannot succeed.

disputed and less determinative than those relating to the other charges. Mr. Russell contends that the license plate was clear and readable while Officer Rigby continues to maintain that it was not. At the hearing on Mr. Russell's Motion to Suppress based on the initial stop, the court found that there was "not satisfactory proof . . . to sustain the State's burden" to establish probable cause and granted the Motion to Suppress. (Pl.'s Ex. C at 102-03.) This raises some question as to whether the proceedings for the alleged violation of § 39:3-33 terminated in a manner indicating Mr. Russell's innocence. As discussed above, however, there is no evidence presently in the record reflecting the course and termination of the municipal court proceedings.

This evidentiary gap is fatal to the claim. In *DiFronzo v. Chiovero*, the Third Circuit concluded that an order granting *nolle prosequi* did not indicate the plaintiff's innocence. 406 F. App'x at 609. The Court observed that neither the order "nor any other matter in the record" stated why the motion was filed and granted, noting that the motion was not submitted as part of the record. *Id.* Similarly here, there is no evidence in the record concerning the termination of the municipal court charges. All that remains is speculation that those charges ended with or because of the dismissal of the indictment. There is no indication that those matters were before that court. Ultimately, then, as with the other

22

municipal court offenses, this lack of evidence precludes a finding that these proceedings terminated in Mr. Russell's favor.[8]

Thus, in sum, Mr. Russell has failed to establish the favorable termination element. The evidence in the record demonstrates that Mr. Russell committed most of the offenses charged and Mr. Russell has not come forth with contradictory evidence that raises a genuine issue for trial. Moreover, the only evidence regarding the termination of Mr. Russell's criminal proceedings does not indicate

---

[8] The Court also notes that a malicious prosecution claim based on the § 39:3-33 offense likely would fail to satisfy the unaddressed fifth element of malicious prosecution, which requires a plaintiff to show that "the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith*, 318 F.3d at 521. Mr. Russell received the summons for the license plate offense after his arrest for driving while intoxicated. (Pl.'s Dep. 79:9-20.) Mr. Russell testified that he made a court appearance in municipal court the week after the stop and then "every two weeks following up until" June 26, 2012. (*Id.* at 92:6-8.) According to Mr. Russell, "every time [he went] into court, they would postpone it to do something, to do something else, and that was it, and so I never actually went back to court to finish the matter." (*Id.* at 92:21-24.) Mr. Russell does not allege, and there is no evidence indicating, that he was arraigned, posted bail, or encountered any other restrictions in relation to the Municipal Court action. Rather, Mr. Russell was required to attend court on some number of occasions. Attendance at a hearing or trial does not qualify as a seizure for malicious prosecution purposes under § 1983. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *see also Malcomb v. Dietz*, 487 F. App'x 683, 686 (3d Cir. 2012) (issuance of traffic citation and order to appear in court did not constitute deprivation of liberty consistent with the concept of seizure). For this additional reason, Mr. Russell's malicious prosecution claim for the license plate offense cannot succeed.

that Mr. Russell was innocent. Accordingly, Mr. Russell's malicious prosecution claim must fail.

### IV.  Conclusion

For the foregoing reasons, Defendant Jason Rigby's Motion for Summary Judgment is **GRANTED**.  An appropriate order shall issue.

Dated: February 19, 2020        s/ Karen M. Williams
                                KAREN M. WILLIAMS
                                United States Magistrate Judge